[Cite as *State v. Barksdale*, 2013-Ohio-1066.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
|  | : | Appellate Case No. 23422 |
| Plaintiff-Appellee | : | |
|  | : | Trial Court Case No. 08-CR-3283 |
| v. | : | |
|  | : | |
| CHRISTOPHER BARKSDALE | : | (Criminal Appeal from |
|  | : | Common Pleas Court) |
| Defendant-Appellant | : | |
|  | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of March, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. #0069829, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

CHRISTOPHER WESNER, Atty. Reg. #0082699, Post Office Box 920, 22 North Market Street, Suite C, Troy, Ohio 45373
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, P.J.

{¶ 1}   Defendant-appellant Christopher Barksdale appeals from his conviction and

sentence for two counts of Felonious Assault. He contends that his conviction is against the manifest weight of the evidence because the evidence supports his contention that he acted in self-defense when he stabbed Curtis Johnson. He further contends that the two counts of Felonious Assault should have been merged for sentencing purposes.

{¶ 2} We conclude that the failure to find that Barksdale acted in self-defense is not against the manifest weight of the evidence. The State concedes that the trial court should have merged the two Felonious Assault counts for sentencing purposes. We agree.

{¶ 3} Accordingly, the sentence is Reversed, and this cause is Remanded for the State to elect upon which of the two merged sentences Barksdale shall be sentenced, and for the trial court to re-sentence Barksdale accordingly.

## I.   A Fight Results in a Stabbing

### A.   The Victim's Testimony

{¶ 4} Curtis Johnson and his fiancée, Anita Trammell, live together on South Broadway Street in Dayton. One day in August 2008, Johnson was cooking in the kitchen of his residence when he observed a car pull up to his house. He testified that he recognized the car as Barksdale's. Barksdale was dating Anita's sister, Patricia Trammell.

{¶ 5} Johnson testified that Patricia and Anita were in the living room when they got into a physical altercation. Johnson testified that he came out of the kitchen and attempted to separate the women; Barksdale burst into the home, said "get off her," and swung his fist at Johnson. According to Johnson, he pushed Barksdale back out the front door, then Barksdale grabbed him and caused him to flip over the porch railing. Johnson testified that Barksdale

then came off the porch, knocking over a small child, and that he and Barksdale then engaged in a fistfight. Johnson testified that Barksdale turned and ran away. Johnson then turned to walk away. He heard Barksdale say that he was going "to get" Johnson. Johnson testified that he saw Barksdale reach for something and then Barksdale came swinging at him. He testified that Barksdale stabbed him several times with a knife, before retreating to his car.

### B.   The Defendant's Testimony

{¶ 6}   Barksdale testified that he was sitting in his car when he heard an argument start inside the house. He testified that he "never stepped up in the house all the way." He saw that Patricia had Anita in a headlock and that Johnson was on top of Patricia. Barksdale further testified that three kids were also pulling at Patricia. Barksdale testified that he said "you all get off of her," and Johnson yelled back at him. According to Barksdale, he replied to Johnson that he was just trying to break up the altercation between the women, and Johnson "immediately came toward" him.

{¶ 7}   Barksdale testified that as Johnson came toward him, he "backed out of the door," and Johnson swung at him. Barksdale testified that he was able to duck the swing, and that as he stood back up, he threw Johnson over the porch railing.

{¶ 8}   Barksdale testified that he then ran down the steps, bumping into a small boy. He testified that he was at "the end of the street," telling Patricia and her daughter to "come on," when Johnson ran into the house and came back out with something under his shirt. Barksdale testified that Johnson was "coming up on [him] at a fast, fast pace," and that

Barksdale caught Johnson's hand and then "sucker-punched him."

{¶ 9}   Barksdale testified that he was "hysterical" and "in fear," so he grabbed his pocketknife and "just got to swinging."   Barksdale testified that both men then stepped back, and Johnson went toward the house, at which point Barksdale ran to his car.   He testified that he again yelled for Patricia and her daughter, both of whom got in the car.   They proceeded to leave the premises.

### C.   Anita Trammell's Testimony

{¶ 10}   Anita Trammell testified for the State.   She testified that she and Patricia got into a physical fight, and Johnson came into the room and tried to   break them apart.   At that point, Barksdale came into the house and told Johnson to "get off of her."   Anita testified that Johnson replied, "man, I'm just trying to break them up."   She testified that she observed Barksdale try to grab or hit Johnson, and the two ended up outside the house.

{¶ 11}   Anita Trammell testified that she did not see the scuffle that took place outside, because she and her sister continued to fight until they were pulled apart by Anita's daughter, Imani Trammell,, and Imani's friend, Phylnieshia Streaty.

### D.   Imani Trammell's Testimony

{¶ 12}   Imani Trammell testified for the State.   She testified that Johnson was attempting to break up the fight between her mom and aunt.   Barksdale then "busted through the door and tried to swing at [Johnson]."   She testified that as Barksdale came through the door, he said "get off my woman," and Johnson replied that he was not trying to hit Patricia.

{¶ 13} Imani testified that Barksdale then swung at Johnson. Imani testified that Johnson then pushed Barksdale out of the house, and Barksdale grabbed Johnson by the shirt and pushed Johnson over the railing off of the porch. She testified that Johnson got up and started toward Barksdale and the porch stairs. At the same time, Barksdale ran off the porch toward the street, running into a little boy who fell down by the street.

{¶ 14} Imani testified that Johnson and Barksdale "met up by the tree, like in front of the fire hydrant. And they were like sort of tussling and fist fighting." She testified that Barksdale then pulled out a knife and started stabbing Johnson. She testified that Johnson never returned to the house once the altercation with Barksdale moved outside.

### E. Phylnieshia Streaty's Testimony

{¶ 15} Phylnieshia Streaty testified for the State. She testified that she was on a drill team with Anita Trammell's daughters, and was present when this incident occurred. Streaty testified that Anita and Patricia began to fight, and Johnson attempted to stop the fight.

{¶ 16} According to Streaty, Barksdale then ran in the door and pushed Johnson, who said that he was just attempting to stop the fight. Streaty testified that Barksdale then swung at Johnson, and Johnson pushed Barksdale out of the house. Streaty testified that the two men went out the door wrestling, and Barksdale threw Johnson over the porch railing. She testified that as Johnson got up, Barksdale went down the porch stairs and shoved a boy to the ground, before running behind a tree. According to Streaty, Johnson picked up the boy, then walked toward Barksdale.

{¶ 17} She testified that the men were facing each other going around the tree when she went back inside to break up the fight between the two women. Streaty testified that

when she came back out, she saw the two men "holding" each other, and then heard Johnson say that he had been stabbed. At that point, Barksdale ran to his car, and eventually left the scene. Streaty testified that Johnson never went back into the house after the fight went outside.

### F. Laretha Strickland's Testimony

{¶ 18} Laretha Strickland testified for the State. Consistently with the other State's witnesses, she testified that as Johnson attempted to stop the fight in the house, Barksdale came in and pushed Johnson. Johnson then pushed Barksdale out of the house.

{¶ 19} Strickland testified that Barksdale threw Johnson over the porch railing and ran down the steps. She testified that the two men were trying to punch each other when Barksdale stabbed Johnson. She further testified that Johnson did not re-enter the house after he pushed Barksdale out the front door.

### G. Dr. Harry Anderson's Testimony

{¶ 20} Harry Anderson, M.D., testified for the State. He is a trauma surgeon who treated Johnson at Miami Valley Hospital. He testified that Johnson was stabbed on his chin, his right arm, and in his lower chest/upper abdominal area. According to Anderson, the third wound caused Johnson's lung to collapse, and was a potentially life-threatening wound. Anderson testified that the wound required admission to the hospital for two days until Johnson was able to return home.

### H. Patricia Trammell's Testimony

{¶ 21}   Patricia Trammell testified for Barksdale.   She testified that she was on top of her sister, grabbing her sister's hair, when Streaty came in and tried to "pry [her] hand loose." She testified that a "little" girl "grabbed [her] from the back of [her] neck, * * * and somebody was trying to grab [her] feet."   Patricia testified that Johnson came in and "was over the top of [her]," when Barksdale came up to the door.

{¶ 22}   Patricia Trammell testified that Barksdale opened the door and said, "y'all get off of her."   Patricia testified that Johnson looked up and said, "what you got to do with it, you fat M-F."   Patricia further testified that Johnson "jumped" off of her and ran toward Barksdale, who was backed up out of her sight.   She testified that she saw Johnson "run in the house real quick, then he ran back outside.   Before he ran outside, he was at the door like this. He had something under his shirt * * * and he hollered out, 'well, you're not going to get away with this.' "

{¶ 23}   Patricia Trammell testified that Johnson ran back into the house saying that he had been stabbed.   Patricia admitted on cross-examination that she lied to the police when they came to her residence, by telling them that Barksdale was not in the home.   The police found him hiding in the bedroom.

### I. Stephanie Trammell's Testimony

{¶ 24}   Stephanie Trammell, Patricia Trammell's daughter, testified for Barksdale. She testified that as her mother and aunt were fighting, Johnson came in the house from the front porch and began "pulling" her mother.   She testified that Barksdale then walked in and

told Johnson to get off of her mother.

{¶ 25}  Stephanie Trammell testified that Johnson swung at Barksdale, missing, and Barksdale "flipped him over the balcony."  She testified that Johnson "fell hard," and then got up and ran back into the house.  Meanwhile, Barksdale ran off the porch, almost knocking a boy down.

{¶ 26}  Stephanie Trammell testified that Johnson ran back out of the house "with his hand under his shirt in the back of his shirt like you're not going to get away with this.  And he ran off the porch after [Barksdale]."  She testified that she then went back into the house to help her mother, and when she stepped back outside, she saw Johnson come up the porch stairs and heard him say that he had been stabbed.

### J.  William Redd's Testimony

{¶ 27}  William Redd testified for Barksdale.  He testified that he is related to the Trammells.  He testified that he was "next door on the porch" at a friend's home drinking beer when the incident occurred.  He said the "scuffle" between Johnson and Barksdale started on Johnson's porch.

{¶ 28}  Redd testified that the men went down to the sidewalk, and then Johnson went back into the house "real quick" and returned.  According to Redd, Barksdale was standing in the street when Johnson approached him with his hand behind his back.  Redd testified that Johnson "just started swinging *** and then all of a sudden they just like split up."  Redd testified that Barksdale then got into his car and told Patricia and Stephanie to "come on."

{¶ 29}  On cross-examination, Redd testified that while the men were still on the

porch, he went into the friend's house to get a phone, and came back out to call Anita and Patricia's brother. He testified that when he came back out, the men were still on the porch, and then they came down off the porch.

{¶ 30} Redd denied seeing Barksdale throw Johnson off the porch, testifying that Barksdale came off the porch before Johnson. He denied seeing anything in Johnson's hands when Johnson came back out of the house. Redd testified that he did not make any statements to the police when they arrived.

## II. The Course of Proceedings

{¶ 31} Barksdale was arrested and ultimately indicted on one count of Felonious Assault (serious physical harm) in violation of R.C. 2903.11(A)(1), and one count of Felonious Assault (deadly weapon) in violation of R.C. 2903.11(A)(2). Following a jury trial, Barksdale was convicted of both charges and sentenced to a prison term of four years on each count, to be served concurrently.

{¶ 32} Barksdale appealed. We affirmed, based upon Barksdale's failure to provide a transcript evidencing his assigned errors. *State v. Barksdale*, 2d Dist. Montgomery No. 23422, 2011-Ohio-630. Barksdale applied under App.R. 26(B) to reopen his appeal, based upon a claim of ineffective assistance of appellate counsel. We granted the application.

## III. Barksdale's Convictions Are Not Against
## the Manifest Weight of the Evidence

{¶ 33} Barksdale's First Assignment of Error states as follows:

THE DEFENDANT'S CONVICTIONS FOR FELONIOUS ASSAULT

WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 34}    Barksdale contends that the jury's rejection of his defense that he stabbed Johnson in self-defense is against the manifest weight of the evidence.

{¶ 35}    Self-defense is an affirmative defense, which the defendant must prove by a preponderance of the evidence. R.C. 2901.05(A); *State v. Jackson*, 22 Ohio St.3d 281, 490 N.E.2d 893 (1986).   In order to establish the defense, the accused must prove that he was not at fault in creating the situation giving rise to the affray; that he had a bona fide belief that he was in imminent danger of death or great bodily harm and his only means of escape from the danger was in the use of force; and that he did not violate any duty to retreat or avoid the danger.   *State v. Davis,* 2d Dist. Montgomery No. 21904, 2007–Ohio–6680, ¶ 14.

{¶ 36}   Barksdale argues that he was not at fault in creating the situation, because he stayed in his car until he heard the argument inside the house.   He contends that he opened the screen door to the house only to tell Johnson to "get off of her," whereupon Johnson took a swing at him.   He further argues that even if he "was at first the aggressor every witness testified that after Johnson went over the rail it was Johnson that pursued [him]."

{¶ 37}   Barksdale also argues that he had reasonable grounds to believe that he was in imminent danger of great bodily harm, because Johnson went back into the house and came back out, appearing to conceal something that Barksdale believed to be a knife.   Finally, Barksdale claims that all accounts of the event demonstrate that at the time of the stabbing, he was attempting to get away from Johnson, and that it was Johnson's "relentless pursuit of [him] that gave rise to the situation that led up to the stabbing."   In short, he argues that he

did not initiate the fight, did not violate any duty to retreat, and had a reasonable basis for believing that he was in danger. Therefore, he contends that his conviction is against the manifest weight of the evidence.

{¶ 38} When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 39} There is credible evidence that Barksdale initiated the fight between himself and Johnson, by entering the house and attempting to hit Johnson. There is also credible evidence that the fight continued when Johnson responded by pushing Barksdale out of the house, onto the porch, where Barksdale proceeded to throw Johnson over the railing.

{¶ 40} Barksdale contends that all of the witnesses, including those for the State, testified that after he pushed Johnson off the porch, he retreated, by running away. He further contends that the witness accounts demonstrate that Johnson pursued him, despite his best efforts to retreat.

{¶ 41} We do not agree with Barksdale's assertion that Johnson was the only one who continued the fight. The testimony of Laretha Strickland, Imani Trammell and

Phylnieshia Streaty does not demonstrate that Barksdale was running away from Johnson. To the contrary, although their testimony can be construed as indicating that Johnson got up, after falling from the porch, and went toward Barksdale to continue the fight, their testimony also indicates that Barksdale was facing Johnson, walking backward, all the while continuing to engage in a fistfight. In other words, their testimony does not indicate that Barksdale turned and ran, but rather that as the fistfight continued, Barksdale was walking backwards while continuing to fight..

{¶ 42} Furthermore, while Barksdale, Patricia Trammell, Stephanie Trammell, and Redd all testified that Johnson went into the house, and came back out holding his hand behind his back, there was conflicting testimony that Johnson never returned to the house. Thus, there was evidence upon which the jury could rely to reject Barksdale's claim that Johnson went into the house and came back out with a knife, and upon which the jury could rely in finding that Johnson was not armed during the encounter. The jury had evidence before it upon which it could rely in finding that the men were engaged in one continuous fight, which was not interrupted either by Johnson's return to the house to get a knife, or by Barksdale turning and breaking off the fight by running away.

{¶ 43} This case turned upon witness credibility. The jury chose to credit the testimony of the State's witnesses. That testimony was not unworthy of belief. We cannot say that the jury lost its way, resulting in a manifest miscarriage of justice.

{¶ 44} Barksdale's First Assignment of Error is overruled.

## IV. As the State Concedes, the Two Felonious Assault

**Convictions Should Have Been Merged**

**{¶ 45}**   Barksdale's Second Assignment of Error is as follows:

THE TRIAL COURT ERRED IN CONVICTING THE DEFENDANT OF TWO COUNTS OF FELONIOUS ASSAULT AS THE OFFENSES WERE ALLIED AND SHOULD HAVE BEEN MERGED FOR SENTENCING.

**{¶ 46}**   Barksdale contends that the Felonious Assault counts stem from the same course of action, and that the holding of the Supreme Court of Ohio in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, mandates that the counts be merged for purposes of sentencing.   The State concedes error, and notes that it failed to elect upon which count Barksdale should be sentenced.   We agree.

**{¶ 47}**   Barksdale's Second Assignment of Error is sustained.


**V.   Conclusion**

**{¶ 48}**   Barksdale's First Assignment of Error having been overruled, and his Second Assignment of Error having been sustained, the sentence is Reversed, and this cause is Remanded for the State to elect upon which count Barksdale should be sentenced, and for the trial court to sentence Barksdale accordingly.

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

Copies mailed to:

Mathias H. Heck
Michele D. Phipps
Christopher Wesner
Hon. Timothy N. O'Connell